# Exhibit A

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IN RE: FORD MOTOR CO. DPS6 POWERSHIFT TRANSMISSION PRODUCTS LIABILITY LITIGATION** | Case No. 18-ML-02814 AB (FFMx) <br><br> **ORDER NO. 2: ORDER DENYING TEST MOTIONS FOR REMAND** |
| **THIS DOCUMENT RELATES TO:** <br><br> *Dyanna Dawn Becker, et al. v. Ford Motor Company, et al.*, 2:18-cv-00942-AB-FFM <br> *Aaron Duerksen v. Ford Motor Company, et al.*, 2:18-cv-01071-AB-FFM <br> *Michael D. Bell v. Ford Motor Company, et al.*, 2:18-cv-01752-AB-FFM <br> *Crystal Vasquez v. Ford Motor Company, et al.*, 2:18-cv-02972-AB-FFM <br> *Ellen Eggers and Paul Eggers v. Ford Motor Company, et al.*, 2:18-cv-03493-AB-FFM <br> *Connie Hill v. Ford Motor Company; et al.*, 2:18-cv-04409-AB-FFM <br> *Rigoberto Sumano v. Ford Motor Company, et al.*, 2:18-cv-04580-AB-FFM | |

Before the Court are test Motions for Remand filed by the Plaintiffs in seven member actions in this MDL. There were four motions filed by Plaintiffs represented by the Consumer Legal Remedies, APC Firm ("CLR Firm"), and three motions filed

1.

by Plaintiffs represented by the Knight Law Group LLP ("KLG Firm").[1] Defendant Ford filed oppositions, and the Plaintiffs filed replies. The Court heard oral argument on August 29, 2018. For the following reasons, the Court **DENIES** all of the Motions.

I.  **BACKGROUND**

The actions in this MDL all concern the alleged malfunctioning of certain of Ford's vehicles equipped with the DPS6 dual-clutch transmission. The actions assert a combination of California state-law claims against Ford, in particular, Lemon Law claims under the Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1790-1795.5 ("Song-Beverly"); and fraudulent inducement by concealment, omission, intentional misrepresentation, and negligent misrepresentation. All of the actions except *Becker* also assert claims against California-citizen auto dealers ("Dealers") that attempted to perform repairs on the defective vehicles.

Ford removed the actions on the basis of diversity jurisdiction, alleging that the amount in controversy in each case exceeds the $75,000 jurisdictional threshold, and that complete diversity exists because insofar as California Dealers are named as Defendants, they are fraudulently joined such that their California citizenship should be disregarded for purposes of analyzing complete diversity. The remand motions raise overlapping issues. First, the Plaintiffs argue that Ford did not establish that the amount in controversy is satisfied. Second, they also argue that the Dealers are not fraudulently joined, so their citizenship counts for diversity purposes and forecloses

---

[1] The CLR Firm filed motions in the following cases:
- *Crystal Vasquez v. Ford Motor Company, et al.*, 2:18-cv-02972-AB-FFM
- *Ellen Eggers, et al. v. Ford Motor Company, et al.*, 2:18-cv-03493-AB-FFM
- *Connie Hill v. Ford Motor Company, et al.*, 2:18-cv-04409-AB-FFM
- *Rigoberto Sumano v. Ford Motor Company, et al.*, 2:18-cv-04580-AB-FFM

The KLG Firm filed motions in the following cases:
- *Dyanna Dawn Becker, et al. v. Ford Motor Company, et al.*, 2:18-cv-00942-AB-FFM
- *Aaron Duerksen v. Ford Motor Company, et al.*, 2:18-cv-01071-AB-FFM
- *Michael D. Bell v. Ford Motor Company, et al.*, 2:18-cv-01752-AB-FFM

The Court will refer to these groups as the CLR Plaintiffs and the KLG Plaintiffs, and to individual cases by the Plaintiff's last name.

2.

1 complete diversity.

## II. LEGAL STANDARD

Under 28 U.S.C. § 1441(a) ("Section 1441"), a civil action may be removed to the district court where the action is pending if the district court has original jurisdiction over the action. Under 28 U.S.C. § 1332 ("Section 1332"), a district court has original jurisdiction of a civil action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and the dispute is between "citizens of different states." Section 1332(a)(1) requires complete diversity, meaning that "the citizenship of each plaintiff is diverse from the citizenship of each defendant." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996). Section 1441(b)(2) further limits removal to cases where no defendant "properly joined and served . . . is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2).

"The burden of establishing federal jurisdiction is on the party seeking removal, and the removal statute is strictly construed against removal jurisdiction." *Prize Frize, Inc. v. Matrix (U.S.) Inc.*, 167 F.3d 1261, 1265 (9th Cir.1999), *superseded by statute on other grounds as stated in Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 681 (9th Cir.2006); *Martinez v. Los Angeles World Airports*, 2014 WL 6851440, at *2 (C.D.Cal. Dec.2, 2014). The removing party does not need to prove actual facts but rather need only include a "short and plain statement" setting forth "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Company, LLC v. Owens ("Owens")*, 135 S.Ct. 547, 554 (2014); Fed. R. Civ. P. 8(a). Where the plaintiff contests the defendants' allegations, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Owens*, 135 S.Ct. at 550.

The removal statute is "strictly construe[d] against removal jurisdiction." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). Thus, "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Id.* "If at

3.

any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

## III. DISCUSSION

### A. Amount in Controversy

#### 1. Legal Standard

"The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). The notice of removal "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," and need not contain evidentiary submissions. *Owens*, 135 S.Ct. at 554. "Evidence establishing the amount is required [] only when the plaintiff contests, or the court questions, the defendant's allegation." *Id.* Thus, where "it is unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold." *Urbino v. Orkin Servs. of Cal., Inc.*, 726 F.3d 1118, 1121–22 (9th Cir. 2013) (internal citations and quotation marks omitted). The court can consider the complaint, allegations in the removal petition, and "summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005) (*quoting Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)).

#### 2. The CLR Plaintiffs

For the CLR Plaintiffs, the amount in controversy is established on the face of the Complaints. It is well-established that "the sum claimed by the plaintiff controls if the claim is apparently made in good faith," and that "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89 (1938). Here, each of the CLR Plaintiffs' Complaints allege that they "suffered

4.

damages in a sum to be proven at trial in an amount that exceeds $25,000," and each seeks a civil penalty of two times this amount. *See, e.g, Vasquez* Compl. ¶¶ 107, 108. This alone totals $75,000. Add on the request for attorneys' fees under Song-Beverly, and punitive damages under the fraud counts, and the $75,000 threshold is exceeded.

The CLR Plaintiffs argue that their allegation that their damages exceed $25,000 is merely the unlimited jurisdiction demand allegation applicable in California Superior Court, and suggest it should be disregarded on that basis. But this allegation is not merely an entry on the civil cover sheet that the "demand" exceeds $25,000; it is a factual allegation in the Complaint that the CLR Plaintiffs "suffered damages" in an amount that exceeds $25,000. The Court accordingly reads the Complaints as pleading $25,000 in "damages," and seeking a civil penalty of two times this amount for the Song-Beverly claims. The CLR Plaintiffs point to no authority supporting their argument that its "damages" allegation can be ignored because it pled it only to establish unlimited jurisdiction in state court. The CLR Plaintiffs have not made any substantial showing—let alone to the point of "legal certainty"—that they will not be able to recover the amount they put in issue in their complaints.

The Court also rejects the CLR Plaintiffs' argument that Ford should be estopped from arguing the amount in controversy exceeds $75,000 in light of Ford's counsel's alleged adoptive admission in the *Vargas* class action that the value of these cases is only between $25,000 and $30,000. The relevant statement—that counsel heard that Song-Beverly claims in general settle for $25,000-$30,000—was originally made by the objectors' counsel, not by Ford's counsel. Furthermore, this was not a statement of the amount in controversy of the cases now before the Court, but a hearsay statement about what Song-Beverly cases tend to settle for. The amount in controversy is the amount a plaintiff's claims put in controversy, not the amount plaintiffs might eventually agree to in settlement, which by definition is a compromise of claims. The *Vargas* plaintiffs' counsel and Ford's counsel then responded to that

5.

assertion, but none of their statements can be read as admitting that the amount in controversy is $25,000-$30,000. Having determined that Ford did not make the admission the CLR Plaintiffs attribute to it, the Court need go no further to reject the estoppel argument.

The Court therefore finds that the amount in controversy is satisfied as to the CLR Plaintiffs.

### 3. The KLG Plaintiffs

As to the KLG Plaintiffs, their Complaints do not expressly state an amount in controversy.[2] However, Ford presents calculations based on the KLG Plaintiffs' demands that establish that the amount in controversy exceeds $75,000.

For their Song-Beverly claims, each of the KLG Plaintiffs seek "reimbursement of the price paid for the vehicle less that amount directly attributable to use by the Plaintiffs prior to discovery of the nonconformities," plus a civil penalty of up to 2 times the actual damages. *See, e.g., Becker* Compl. ¶¶ 119, 122. According to Ford's calculations, these amounts total about $39,582 (*Bell*), $47,982 (*Duerksen*), and $42,811 (*Becker*). Plaintiffs also seek attorneys' fees as authorized by Song-Beverly, and Ford asserts that the KLG attorneys have regularly sought over $100,000 in attorneys' fees in numerous cases similar to these. *See* Hugret Decl. (Dkt. No. 1-5), ¶¶4-6. Plaintiff's counsel's actual fee requests in nearly-identical cases is highly probative of the amount put in controversy by their request to recover fees in this case. For their fraud claims, the KLG Plaintiffs seek "restitution of all monies expended" plus punitive damages (*see Becker* Compl., Prayer ¶¶ b, g), which could be up to nine times that amount. Ford calculates the fraud claims to put in issue a total of $190,840

---

[2] The KLG Plaintiffs' state court Civil Case Cover Sheets do indicate that these are "unlimited" jurisdiction cases in which the amount "demanded" exceeds $25,000. But Ford doesn't rely on this to establish that the amount in controversy is satisfied, so the Court will disregard it with respect to the KLG Plaintiffs. Furthermore, there is a difference between the CLR Plaintiff's allegation in their Complaints that their "damages" exceed $25,000, and the KLG Plaintiffs' indicating on the civil cover sheet that the amount "demanded" exceeds $25,000.

6.

1  (*Bell*), $203,688 (*Duerksen*), and $180,067 (*Becker*). Based on these calculations, the amount in controversy exceeds $75,000.

The KLG Plaintiffs' counterarguments are unavailing. The KLG Plaintiffs do not dispute Ford's arithmetic regarding the reimbursement/restitution claims. but argue that they do not account for "the multitude of offsets and deductions that *Defendant itself* routinely demands in similar cases, such as manufacturer's rebates, negative equity, service contract, and trade-in condition reductions." *See Becker* Mot. 7:11-14 (original emphasis). But again, the amount in controversy is established by what the plaintiff demands, not by any reductions that a defendant might achieve through its defenses. *See Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1108 (9th Cir. 2010) ("if a district court had to evaluate every possible defense that could reduce recovery below the jurisdictional amount the district court would essentially have to decide the merits of the case before it could determine if it had subject matter jurisdiction"); *see also Garcia v. ACE Cash Express, Inc.*, No. SACV 14-0285-DOC, 2014 WL 2468344, at *3 (C.D. Cal. May 30, 2014) (relying on *Geographic Expeditions* to hold that "'potential offsets' are inapplicable to the amount-in-controversy exception"). The KLG Plaintiffs also argue that Ford has not shown that attorneys' fees would be at least $100,000 because attorneys' fees are calculated as of the time of removal, not through the entirety of an action. But this argument was rejected by the Ninth Circuit's recent opinion concluding that where attorneys' fees are recoverable, future fees and not just fees incurred at the time of removal are "at stake" in the litigation and should be included in the amount in controversy. *See Fritsch v. Swift Transportation Co. of Arizona*, LLC, No. 18-55746, 2018 WL 3748667, at *6 (9th Cir. Aug. 8, 2018) (so holding). Ford's declaration that the KLG Firm routinely seeks attorneys' fees of more than $100,000 in cases alleging the same claims against Ford is sufficient to establish that this amount is in issue.

As to the fraud claims, the KLG Plaintiffs argue that Ford has not established that the amount of punitive damages in issue is up to 9 times the amount of restitution

7.

available. But, the question is whether all of the claims together put more than $75,000 in issue. The Court need not pinpoint an amount of punitive damages in issue, but it suffices to say that if the amount put in controversy by the Song-Beverly claims were to fall somewhat short of the threshold, that shortfall would not be great and is easily made up by punitive damages available through the fraud claim. The Court also notes that in the state court case *Cazares*, which alleged the same claims based on an allegedly defective DPS6 transmission, the KLG Firm filed a damages expert report calculating punitive damages to be 9 times the restitutionary amount (*see* Luna Decl. Dkt. No. 1-6), and that in another such case, *Myers*, the jury awarded punitive damages of $500,000, which was more than nine times the actual damages ($54,365) awarded the plaintiff. *See* Thomas Decl. (18-ml-02814, Dkt. No. 85) Ex. E (*Myers* verdict). Given that these cases are nearly identical to the cases before this Court, the Court finds that this evidence establishes by a preponderance that the punitive damages claim is sufficient to at least make up any difference between the compensatory damages and attorneys' fees put in issue by the Song-Beverly claims, and the $75,000 jurisdictional threshold.

      Finally, Ford points to the $75,001 settlement offers it made to dozens of plaintiffs in these cases, none of which were accepted, as establishing the amount in controversy exceeds that amount. The KLG Plaintiffs characterize the offer as gamesmanship and urge the Court to disregard it. However, the logic behind Ford's argument is clear: if the amount in controversy were *less* than $75,000 as Plaintiffs contend, then Plaintiffs should have accepted a settlement offer for $75,001. Because Plaintiffs did not accept these settlements, they must believe that not only do their cases put more than that in controversy, but that they're likely to do better by litigating. Although the unaccepted settlement offers are by no means conclusive, they do have some probative value and reinforce the Court's conclusion that the amount in

controversy is satisfied.[3]

## B. Whether There is Complete Diversity of Citizenship

All but one of the cases addressed in these motions name a California Dealer as a defendant; these Dealer defendants defeat complete diversity. There is no dispute that except for the Dealer defendants, there is complete diversity between the Plaintiffs and Ford. In its Notices of Removal, Ford argued that the Dealers were fraudulently joined and that therefore their citizenship can be disregarded for purposes of diversity.

### 1. Fraudulent Joinder

A non-diverse party may be disregarded for purposes of determining whether jurisdiction exists if the court determines that the party's joinder was "fraudulent" or a "sham." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001); *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998); *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987). The term "fraudulent joinder" is a term of art and does not imply any intent to deceive on the part of a plaintiff or his counsel. *Lewis v. Time Inc.*, 83 F.R.D. 455, 460 (E.D. Cal. 1979) *aff'd* 710 F.2d 549 (9th Cir. 1983) *impliedly overruled on other grounds in Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990). "There are two ways to establish fraudulent joinder: '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" *Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543, 548 (9th Cir. 2018) (internal citation omitted).

### 2. Ford Has Established that the Dealers Were Fraudulently Joined.

Ford argues both theories of fraudulent joinder as to the KLG Plaintiffs, and

---

[3] The *Becker* case differs from the others addressed herein because no Dealer defendant was named, and therefore the only jurisdictional issue is whether the amount in controversy is satisfied. Because the amount in controversy is satisfied, the *Becker* motion for remand will be denied.

9.

only the second theory as to the CLR Plaintiffs. The Court will address each theory in turn.[4]

### a. Ford <u>Has Not</u> Shown "Actual Fraud" In The Pleading of Jurisdictional Facts.

Ford states that the KLG Plaintiffs' negligent repair allegations against the Dealers are fraudulent because they were "cut and pasted into dozens of complaints, without regard to the actual facts of any case, for the obvious purpose of defeating jurisdiction." Opp'n (Dkt. No. 86) 11:14-17. Ford also points out that KLG started naming Dealers as defendants only once Ford started removing cases to federal court based on diversity jurisdiction. Even assuming these contentions are true, they do not establish "actual fraud" in pleading jurisdictional facts. Indeed, Ford has not explained what "actual fraud" means in this context, nor has it identified a single case where this theory has been proven. It suffices to say that Ford has not shown that any of the facts alleged are false or fraudulent, and therefore it has not established this theory of fraudulent joinder.

### b. Ford <u>Has</u> Shown that the Plaintiffs Cannot Establish a Cause of Action Against the Dealer Defendants.

Ford also argues that the Plaintiffs cannot state a claim against the Dealers.

"Fraudulent joinder is established the second way if a defendant shows that an 'individual[ ] joined in the action cannot be liable on any theory.' " *Grancare*, 889 F.3d at 548 (quoting *Ritchey*, 139 F.3d at 1318). "But 'if there is a possibility that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court.'" *Id.*, 889 F.3d at 548 (*citing Hunter v. Philip*

---

[4] Some of Ford's Notices of Removal argued that the Dealer defendants could be disregarded for diversity purposes because Ford is going to indemnify them. The Motions challenge this proposition, arguing there is no authority for it. Ford has not responded in its oppositions, thereby abandoning its "indemnification" basis for removal.

10.

*Morris USA*, 582 F.3d 1039, 1046 (9th Cir. 2009); *see also Macey v. Allstate Prop. & Cas. Ins. Co.*, 220 F. Supp. 2d 1116, 1117 (N.D. Cal. 2002) ("If there is a non-fanciful possibility that plaintiff can state a claim under California law against the non-diverse defendants the court must remand."). "Merely a 'glimmer of hope' that plaintiff can establish [a] claim is sufficient to preclude application of [the] fraudulent joinder doctrine." *Gonzalez v. J.S. Paluch Co.*, No. 12-08696-DDP (FMOx), 2013 WL 100210, at *4 (C.D. Cal. Jan. 7, 2013) (internal quotations omitted) (brackets in original).

### i. The KLG Plaintiffs

The KLG Plaintiffs assert negligent repair claims against the dealers. Ford contends that the KLG Plaintiffs failed to adequately plead these claims because the complaints plead vague facts, lack facts, and/or seek relief only from Ford. The Court agrees that these claims are woefully inadequately pled: counsel directed the Court to certain paragraphs in the Complaints that they argue adequately plead a claim, but these paragraphs simply do not allege any conduct by the dealers (*see Bell* Compl. ¶¶57-61), or these paragraphs are empty boilerplate devoid of factual matter (*see Bell* Compl. ¶¶ 155-159, *Duerksen* Compl. ¶¶156-160). Such "[l]abels, conclusions, and "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Notably, the gravamen of the negligent repair claim appears to be that the Dealer failed "to properly store, prepare and repair" a vehicle, but the KLG Plaintiffs point to no factual allegations to that effect. The KLG Plaintiffs therefore have not pled any claim for negligent repair against the Dealers.[5]

However, if a complaint "cannot withstand a Rule 12(b)(6) motion . . . the district court must consider. . . whether a deficiency in the complaint can possibly be cured by granting the plaintiff leave to amend." *Grancare*, 889 F.3d at 550. Ford argues that even assuming the KLG Plaintiffs try to re-plead a negligent repair claim,

---

[5] At oral argument, the KLG Plaintiffs' counsel conceded that the negligent repair claims were insufficiently pled.

11.

it would be barred by the economic loss rule. The economic loss rule precludes tort claims (like negligence) for purely economic damages. *In re Mesa Bus. Equip., Inc.*, 931 F.2d 60 (9th Cir. 1991). To successfully bring a claim for negligence, a plaintiff must demonstrate that the defendant's negligence caused harm to person or property. *UMG Recordings, Inc. v. Global Eagle Entm't, Inc.*, 117 F. Supp. 3d 1092, 1103 (C.D. Cal. 2015). Here, the KLG Plaintiffs have not pointed to any allegations establishing that the Dealer's allegedly negligent repair of their vehicles injured them or their property, such as by causing an accident in which they were injured or their vehicles damaged. There are a number of exceptions to the economic loss rule, including the independent tort exception, tortious breach of the implied covenant, and bad faith denial of a contract. *See Harris v. Atl. Richfield Co.*, 14 Cal. App. 4th 70, 77-78 (1993), *as modified on denial of reh'g* (Apr. 8, 1993) (identifying these exceptions). However, the KLG Plaintiffs in no way explain which of these exceptions rescues their claims from the economic loss rule. It is not enough to merely identify some exceptions; Plaintiffs must make some colorable showing that these exceptions apply in their case.

      Finally, Ford argues that Plaintiffs will not be able to show any causation by the dealerships because the defects in the DPS6 transmissions were allegedly irreparable. Both the *Bell* and the *Duerksen* Complaints allege that all of the repairs the Dealers attempted were covered by Ford's warranty, that the repairs Ford recommended were "completely ineffective at addressing the Transmission Defect," that problems with the transmission was "irreparable," and that Ford did not disclose "its inability to repair the defects." *See Bell* Compl. ¶¶ 67, 87, 136, 139, 172; *Duerksen* Compl. ¶¶ 67, 83, 88, 137, 140. If Plaintiffs' vehicles were plagued by defects that were irreparable, that would break any causal connection between the Dealers and the Plaintiffs' alleged harm. Indeed, the KLG Plaintiffs do not respond to this argument, and they point to no allegations of harm caused by the Dealers as opposed to the defect inherent in their Ford vehicles.

12.

    Given the foregoing, the Court finds that the KLG Plaintiffs have not and cannot state a claim against the Dealer defendants. The standard for fraudulent joinder is high, but it has been met here.

### ii. The CLR Plaintiffs

    The CLR Plaintiffs do not allege negligent repair claims against the Dealers. Frankly, CLR Plaintiffs' Complaints are not a model of clarity, but in their Motions, they indicate that the first five of their seven claims are alleged against both Ford and the Dealers. This is not obvious from the Complaints, since those claims refer only to "Defendant" in the singular. But for purposes of these motions, the Court accepts the CLR Plaintiffs' characterization of their own Complaints. The first five claims are Lemon Law claims under the Song-Beverly Act, and claims under other California warranty statutes. (The last two claims, pled only against Ford, are fraud claims.)

    Ford contends that the Dealers were fraudulently joined by pointing out that the five claims asserted against them can impose liability only on manufacturers, distributors, and/or sellers. *See* Opp'n (Dkt. No. 90) 5:8-27 (quoting the statutes imposing liability on manufacturers, distributors, and/or sellers). In the cases herein, these Dealers repaired the vehicles; they are not manufacturers, and there are no allegations that they distributed or sold the vehicles in issue, so they cannot be held liable under any of those causes of action.

    The CLR Plaintiffs appear to concede this point, but instead argue that these claims are "equivalent to" negligent repair claims. This argument is unpersuasive. These claims are plainly not equivalent to negligent repair claims because they are statutory warranty claims; they are simply not directed at alleged negligence (the breach of a duty of care) by an entity performing a repair. The CLR Plaintiffs then argue that they can amend the complaints to expressly plead negligent repair claims against the Dealers. But, such an amendment would be futile for the reasons discussed above in connection with the KLG Plaintiffs.

    Finally, the CLR Plaintiffs further argue that they recently received discovery

13.

1 implicating the Dealers in conduct actionable under the fraud claims, so they can
2 amend their complaints to add the Dealers to the fraud claims. Counsel stated this
3 material was subject to a protective order and therefore could not be filed on the
4 record. The Court will not grant the motions based on these vague and unsupported
5 assertions.

6       **iii.    Counsel's Responses At Oral Argument Are Unavailing.**

7     At oral argument, counsel for the CLR Plaintiffs and the KLG Plaintiffs
8 presented a thorough and thoughtful response the above analysis and the Court
9 appreciated the robust dialog on the merits of the motions. Nevertheless, the Court
10 finds the arguments unpersuasive. The Court will address them briefly.

11     The CLR Plaintiffs had referred in their papers to discovery materials that they
12 claim establish a fraud claim against the dealers. At oral argument, counsel explained,
13 in essence, that the Dealers, at Ford's direction, told drivers that there is nothing
14 wrong with the vehicles and that the drivers are just driving them in an incorrect
15 manner. The CLR Plaintiffs contended that this amounts to common law fraud by
16 misrepresentation.  When pressed as to what post-purchase damages these alleged
17 misrepresentations caused, counsel argued that the Plaintiffs incurred additional
18 mileage offsets that would reduce their damages under Song-Beverly, and they
19 continued to pay vehicle registration fees and insurance longer than they would have
20 otherwise. However, the mileage offset is calculated based on the number of miles
21 driven at the first repair attempt, *see* Cal. Civ. Code §1793.2(d)(2)(C) (use deduction
22 based on mileage at time the buyer first delivered vehicle for repair), so additional
23 mileage driven during delays caused by the Dealers' alleged misrepresentations would
24 not create a greater mileage offset. Furthermore, Plaintiffs would have had to pay
25 registration and insurance fees on any vehicle they purchased, so it does not appear
26 that such costs can be deemed "damages" *caused by* whatever misrepresentations the
27 Dealers allegedly made.
28     The Court has also pressed counsel to explain what specific facts the Plaintiffs

14.


could allege tending to show that the Dealers negligently "store[d], prepare[d] and repair[ed]" the vehicles as required to plead a negligent repair claim, but neither counsel offered any additional facts. The Court also invited counsel to explain how their negligent repair claims could overcome the economic loss rule. The CLR Plaintiffs pointed to the exceptions to that rule, and argued that the independent tort exception applies, in particular, that the Dealers' alleged misrepresentations take these cases out of the economic loss rule. But this argument assumes that Plaintiffs can amend to state arguably viable fraud claims against the Dealers, and as discussed above, the Court finds they cannot.

To support the viability of a negligent repair claim and to show that the Dealers are not dispensable parties that could be dropped under Rule 21, both counsel referred to another case, in Riverside, in which Ford asserted a negligent repair defense at trial. According to Plaintiffs, in that case Ford argued that the vehicle was not defective and the problem with it was not Ford's responsibility, but instead the dealer repaired the vehicle negligently, and any liability should attach to the dealer. Counsel suggested Ford could take the same position in this case, thereby implicating the Dealers in these claims. But as CLR Plaintiffs' counsel noted, and as Ford confirmed, that case did not involve a DPS6 transmission and there is no basis to consider it analogous, so that Ford asserted a negligent repair defense there is not germane here. Plaintiffs simply made no showing that there is any factual basis for a negligent repair argument in these cases—either as a claim asserted by Plaintiffs against the Dealers, or as a defense asserted by Ford.

In sum, the removals and motions for remand put squarely in issue whether the Plaintiffs could possibly establish any cause of action against the Dealers. In its oppositions, Ford explained why no claims could lie against the Dealers. Despite this, neither Plaintiffs' replies nor their presentations at oral argument presented any facts that could establish either a negligent repair claim or a fraud claim against the Dealers. The Court therefore finds that there is no possibility that Plaintiffs can amend their

complaints to state any claim against the Dealers.

### iv. Conclusion

On the present state of the record, the Court finds that the Dealer defendants were fraudulently joined. Their citizenship may therefore be disregarded for purposes of diversity jurisdiction, and as a result there is complete diversity and this Court has subject matter jurisdiction over the actions.

### C. In the Alternative The Court Drops the Dealers Under Fed. R. Civ. P. 21

Under Fed. R. Civ. P. 21, "the court may, at any time, on just terms, add or drop a party." "Rule 21 grants a federal district or appellate court the discretionary power to perfect its diversity jurisdiction by dropping a nondiverse party provided the nondiverse party is not indispensable to the action under Rule 19." *Sams v. Beech Aircraft Corp.*, 625 F.2d 273, 277 (9th Cir. 1980). Here, in light of the analysis above, the Court finds that the Dealers are dispensable parties. The Plaintiffs can secure full relief from Ford alone, as the gravamen of their claims is that their Ford vehicles were irreparably defective, and that Ford fraudulently concealed that fact. Plaintiffs have not shown that the Dealers are necessary to afford them full relief as they have not identified any cognizable damages from the Dealers' alleged misrepresentations. As such, to preserve its subject matter jurisdiction, the Court will sever the Dealer defendants.

## IV. CONCLUSION

For the foregoing reasons, the Motions for Remand are **DENIED**.

**IT IS SO ORDERED.**

Dated: 9/10/18

_____
HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE

16.